929 F.2d 1033
 14 UCC Rep.Serv.2d 1205
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager for the
Resolution Trust Corporation, Etc., Plaintiff-Appellee,
v.
INTERNATIONAL PROPERTY MANAGEMENT, INC., Defendant,
and
FWG Partner, Ltd., Intervenor-Appellant.
 No. 90-2828
 Summary Calendar.
United States Court of Appeals,
Fifth Circuit.
 April 16, 1991.
 
 Ronald D. Law, Dilts & Law, Dallas, Tex., for intervenor-appellant.
 Joseph S. Cohen, Hirsch & Westheimer, George A. Rustay, Dow, Cogburn & Friedman, Houston, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before KING, GARWOOD and DUHE, Circuit Judges.
 KING, Circuit Judge:
 
 
 1
 The sole issue on appeal is whether, under Texas law, the assignment of rents clause at issue in this case gave the mortgagee an immediate right to rents upon the mortgagor's default. The district court granted summary judgment to the Federal Deposit Insurance Corporation (FDIC), as conservator for the mortgagee, because the unambiguous language of the assignment of rents clause automatically transferred the right to rents to the mortgagee upon default.[1] We affirm.
 
 I. BACKGROUND AND PROCEDURE
 
 2
 The facts in this case are undisputed. FWG Partner Ltd. (FWG), obtained a construction loan for $5 million to build an apartment complex. It signed a promissory note payable to Commerce Savings Association (CSA), and it executed a deed of trust to CSA that contained an assignment of rents clause. The parties subsequently executed a second deed of trust that contains the assignment of rents clause at issue. FWG defaulted on the note, and the FDIC, as conservator for CSA, filed suit in federal district court. The FDIC sought a temporary restraining order and a temporary injunction against International Property Management, Inc. (IPM) (the management company hired by CSA) in order to prevent IPM from disbursing rental proceeds. The district court entered a temporary retraining order, followed by a preliminary injunction.
 
 
 3
 FWG intervened as owner and counterclaimed against IPM. FWG asserted a right to the rents collected by IPM prior to the date of the temporary restraining order. The district court dismissed IPM from this suit after it deposited the rents with the court registry. The parties submitted cross-motions for summary judgment, and the district court ruled in favor of the FDIC, finding that the assignment of rents clause was an absolute assignment that automatically transferred the right to rents to the mortgagee upon default. FWG filed a timely notice of appeal.
 
 II. THE ASSIGNMENT OF RENTS CLAUSE
 
 4
 On review of a grant of summary judgment, we apply the same substantive standard as the district court. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; City of Madison, Miss. v. The Bear Creek Water Ass'n, Inc., 816 F.2d 1057, 1059 (5th Cir.1987).
 
 
 5
 FWG argues that it is entitled to all rents collected by IPM prior to the FDIC's temporary restraining order. It does not assert a right to rents collected after that date. The parties agree that neither the FDIC nor CSA acted to collect the rents until the FDIC filed this suit. They also concede that Texas law applies to this litigation. IPM has interpleaded the funds at issue in this case, and no third party asserts a right to these funds.
 
 
 6
 Taylor v. Brennan, 621 S.W.2d 592 (Tex.1981), is the seminal Texas case on assignment of rents clauses. In Taylor, the Texas Supreme Court noted that Texas adheres to the lien theory of mortgages. Id. at 593. Under this theory, the mortgagee is not the owner of the property and is not entitled to its possession, rents, or profits. Consequently, mortgagees usually assign to themselves the mortgagor's interest in all rents falling due after the date of the mortgage as additional security for the mortgage debt. Id. In construing assignment of rents clauses, the Texas courts have followed the common law rule that an assignment of rents does not become operative until the mortgagee obtains possession of the property, impounds the rents, secures the appointment of a receiver, or takes some other similar action. Id. at 594 (citing Simon v. State Mutual Life Assur. Co., 126 S.W.2d 682 (Tex.Civ.App.--Dallas 1939, writ ref'd), and McGeorge v. Henrie, 94 S.W.2d 761 (Tex.Civ.App.--Texarkana 1936, no writ)); see also Matter of Village Properties Ltd., 723 F.2d 441, 443 (5th Cir.1984).
 
 
 7
 The parties, however, may agree to an assignment of rents that "operates to transfer the right to rentals automatically upon the happening of a specified condition, such as default." Taylor, 621 S.W.2d at 594 (citing Kinnison v. Guaranty Liquidating Corp., 18 Cal.2d 256, 115 P.2d 450, 453 (Cal.1941)). Such an assignment of rents, referred to by the court as an "absolute assignment," "does not create a security interest but instead passes title to the rents." Id. (citing In re Ventura-Louise Properties, 490 F.2d 1141 (9th Cir.1974)). The borrower under an absolute assignment immediately transfers title to rents to the lender, but retains the right to receive those rents unless and until the borrower defaults. Thus, although the lender's rights arise immediately, the assignment defers the lender's enjoyment of those rights until the borrower's default.
 
 
 8
 The Taylor court could have recognized that all assignments in connection with a mortgage are to secure the debt, as they undoubtedly are, and then taken one of two approaches to such clauses. It could have followed the common law rule and required a mortgagee always to take some step to perfect its interest in rents following default; or it could have decided that it would not follow the common law rule when the parties sufficiently evidence their intent that the right to rents should pass automatically upon default. Texas, however, adopted neither of these straightforward alternatives. Rather, it decided that certain assignments of rents given in connection with a mortgage and contingent upon default constitute title transfers rather than "security interests."
 
 
 9
 The concept of a present transfer of title to rents contingent upon default, as opposed to a security interest in the rents, is essentially a legal fiction. See Randolph, When Should Bankruptcy Courts Recognize Lenders' Rents Interests?, 23 U.C. Davis L.Rev. 833 (1990). The courts that recognize such assignments, such as Texas and California, treat these contingent present assignments not as "security interests" but as the transfer of immediate title to the rents with only the enjoyment of the rents deferred until or unless the mortgagor defaults. Whatever terminology the court uses, however, mortgagees employ such assignments to secure the debt, and all such assignments would be considered security interests under the Uniform Commercial Code (U.C.C.), which treats all transfers intended to secure a debt as security interests despite their form. U.C.C. 9-101 official code comment ("Under this Article the traditional distinctions among security devices, based largely on form, are not retained; the Article applies to all transactions intended to create security interests in personal property and fixtures, and the single term 'security interest' substitutes for the variety of descriptive terms which had grown up at common law and under a hundred-year accretion of statutes.").
 
 
 10
 Article 9 does not apply, however, to the "creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder," U.C.C. 9-102, and the concept of a contingent present assignment of rents apparently derives from real property and trust concepts rather than the U.C.C.[2] That the economic reality underlying absolute assignment of rents is the desire to assure payment of the debt did not prevent the Taylor court from acknowledging that some collateral assignment of rent clauses operate "to transfer rents automatically upon default" without being "activated by some affirmative act" by the mortgagee. Id. at 594. In fact, the principal case cited by the Taylor court as an example of an absolute assignment contains a clause that only can be construed as intended to assure payment of the debt. See In re Ventura-Louise Properties, 490 F.2d 1141 (9th Cir.1974).[3] Such contingent present assignments allow the parties to a mortgage to agree to an assignment that gives the mortgagee an immediate right to rents upon default. In effect, Texas allows the parties to a mortgage to agree that the mortgagee has a right to rents immediately upon default through use of the concept of a present transfer of title with enjoyment deferred until default.
 
 
 11
 Whether an assignment of rents clause creates an absolute assignment or a security interest depends on the intent of the parties.[4] In order to determine the parties' intent, a court must examine both the assignment of rents clause and the security agreements executed contemporaneously with it. Id. The Taylor court construed the assignment of rents clause at issue in that case as a security interest because it contained the phrase "further to secure" and because the assignment permitted "the lender at its option upon default, to enter upon the premises and collect the rents accrued but unpaid, and those rents thereafter accruing and becoming payable." Id. at 594.
 
 
 12
 For public policy reasons, courts are reluctant to construe an assignment of rents clause as absolute. Id. A borrower typically expects to have a chance to negotiate informally after experiencing financial difficulties. An absolute assignment, however, transfers title immediately upon default and before any attempt at negotiation. An immediate transfer of title to the rents may also place the mortgagor in a difficult position if the mortgagee seeks rents that the mortgagor has collected and mingled with its other property. Id. at 594 (citing Prudential Ins. Co. of America v. Liberdar Holding Corp., 74 F.2d 50 (2d Cir.1934)).
 
 
 13
 Because an absolute assignment generally is not intended by the parties, Texas, for public policy reasons, requires especially clear evidence that the parties intended to create such an assignment. If the assignment contains words such as "security" or "pledge," or if it requires some action by the mortgagee after default to secure the rents, the clause will not be construed as an absolute assignment.
 
 
 14
 The assignment of rents clause at issue in the instant case states:
 
 
 15
 5.2 Grantor hereby assigns to Holder all rental payable under each Lease now or at any time hereafter existing, such assignment being upon the following terms: (a) until receipt from Holder of notice of the occurrence of a default, each Lessee may pay Rental directly to Grantor, but after default Grantor covenants to hold all Rental so paid in trust for the use and benefit of Holder; (b) upon receipt from Holder of notice that a default exists, each Lessee is hereby authorized and directed to pay directly to Holder all Rental thereafter accruing; and the receipt of Rental by Holder shall be a release of such Lessee to the extent of all amounts so paid; (c) Rental so received by Holder shall be applied by Holder, first to the expenses, if any, of collection and then in accordance with Section 4.8 hereof; (d) without impairing its rights hereunder, Holder may, at its option, at any time and from time to time, release to Grantor Rental so received by Holder, or any part thereof; (e) Holder shall not be liable for its failure to collect, or its failure to exercise diligence in the collection of Rental, but shall be accountable only for Rental that it shall actually receive; and (f) the assignment contained in this Section 5.2 shall terminate upon the release of this Deed of Trust, but no Lessee shall be required to take notice of termination until a copy of such release shall have been delivered to such Lessee. As between Holder and Grantor, and any person claiming through or under Grantor, other than any Lessee who has not received notice of default pursuant to Section 5.2(b), the assignment contained in this Section 5.2 is intended to be absolute, unconditional and presently effective and the provisions of Sections 5.2(a) and 5.2(b) are intended solely for the benefit of each Lessee and shall never inure to the benefit of the Grantor or any person claiming through or under Grantor, other than a Lessee who has not received such notice. It shall never be necessary for Holder to institute legal proceedings of any kind whatsoever to enforce the provisions of this Section 5.2.
 
 
 16
 (Emphasis added).
 
 
 17
 The FDIC argues, and the district court agreed, that this language creates an absolute assignment that transfers the right to rents to the mortgagee automatically upon default. FWG, on the other hand, argues that the substance of the assignment of rents clause, when construed with the deed of trust, clearly creates a security interest. FWG also observes that public policy disfavors construing such assignments as absolute, and notes that the Texas courts, and the Fifth Circuit, have been reluctant to find such absolute assignments.
 
 
 18
 FWG contends that the deed of trust, note, and assignment of rents clause, when construed together, indicate that the mortgagee included the assignment of rents clause in order to assure payment of the debt and to provide additional protection upon default.[5] We agree. The provisions in the assignment of rents clause that allow the mortgagor to receive rents until default (as defined by the note), that require the mortgagee to apply rental income to the debt (with any remainder going to the mortgagor), and that provide for termination of the assignment of rents on release of the deed of trust would be unnecessary were the clause not intended to assure payment of the debt.[6]
 
 
 19
 The assignment at issue does not use words such as "security" or "pledge." Rather, it states that the assignment "is intended to be absolute, unconditional and presently effective." In addition, the assignment does not require any affirmative action by the mortgagee to secure the rents. Although the assignment of rents clause allows the mortgagee to give notice to the lessees and collect rents following default, the clause states that this provision is "intended solely for the benefit of each Lessee and shall never inure to the benefit of the Grantor or any person claiming through or under Grantor." The assignment is not contingent upon such notice to the lessees, and rents paid to the mortgagor prior to notice to the lessees are deemed held in trust for the benefit of the mortgagee. Furthermore, the parties agreed that "[i]t shall never be necessary for Holder to institute legal proceedings of any kind whatsoever to enforce the provisions of this [assignment]." These provisions indicate an intent that the mortgagee should have the right to rents immediately upon default.
 
 
 20
 FWG observes that public policy generally disfavors finding an absolute assignment of rents. Public policy disfavors such agreements, however, because an absolute assignment generally does not effect the intent of the parties. The intent of the parties in the instant case, however, is clear. When contract language is clear and unambiguous, principles of construction cannot be applied to vary the meaning of that contract. Bull S.S. Lines v. Thompson, 123 F.2d 943, 944 (5th Cir.1941), cert. denied, 315 U.S. 816, 62 S.Ct. 805, 86 L.Ed. 1214 (1942); Reilly v. Rangers Management, Inc., 727 S.W.2d 527, 529 (Tex.1987). FWG agreed to an "absolute, unconditional and presently effective" assignment of rents and that the mortgagee would not be required "to institute legal proceedings of any kind whatsoever to enforce the provisions of [this assignment]." Public policy does not require us to ignore the clear and unambiguous intent of the parties as expressed in their agreement.
 
 
 21
 FWG also observes that Texas, and the Fifth Circuit, generally do not construe assignment of rents clauses as absolute assignments. The language construed in the cases FWG cites, however, are notably different from the language in the instant case. In In re Casbeer, 793 F.2d 1436, 1442 n. 15 (5th Cir.1986), we failed to find an absolute assignment because "the rental agreements do not appear to be absolute assignments nor does any party so contend," and in Matter of Village Properties Ltd., 723 F.2d 441, 443 (5th Cir.1985), we construed a clause "similar to the one in" Taylor. In these cases, the clause at issue was ambiguous concerning the parties' intent. The clause at issue in the instant case, however, contains no such ambiguity. In Taylor, the Texas Supreme Court indicated that it will give effect to an absolute assignment of rents if the parties intent to create such an assignment is sufficiently clear. The language creating such a clause could hardly be clearer than in the instant case.[7]
 
 III. ATTORNEYS' FEES
 
 22
 FWG contends that the district court improperly denied its request for attorneys' fees when the district court denied its motion for summary judgment. FWG argues that it is entitled to recover attorneys' fees under Tex.Civ.Prac.Rem.Code Sec. 38.001 (Vernon 1986). Under that statute, "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract." A party, however, must prove a valid claim and obtain a judgment as a condition precedent to recovery of attorneys' fees under Sec. 38.001. Huddleston v. Pace, 790 S.W.2d 47, 50-51 (Tex.Civ.App.--San Antonio 1990, writ ref'd). Because FWG failed to plead a valid claim, it has no right to attorneys' fees under Sec. 38.001.
 
 IV. CONCLUSION
 
 23
 For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the FDIC.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 On appeal, the FDIC replaced the Resolution Trust Corporation as plaintiff-appellee. We refer throughout to the plaintiff-appellee as the FDIC
 
 
 [2]
 A contingent present assignment immediately transfers legal title to rents to the mortgagee but the mortgagor continues to enjoy the rents until the occurrence of a specified condition--usually default. Upon the occurrence of the specified condition, the mortgagee receives the right to enjoy the rents (in addition to the legal title he already possessed). This theory appears based on trust concepts, but the Texas courts have not elaborated on this theoretical underpinning
 
 
 [3]
 The Ninth Circuit in Ventura-Louise found that, under California law, the assignment of rents at issue in that case transferred immediate title to the rents and therefore required no further step for perfection under the old Bankruptcy Act. Ventura-Louise, 490 F.2d at 1145. Just as in the instant case, the loan documents purported to assign rents to the lender, but provided that the borrower could collect rents until default. Id. at 1143. The Ventura-Louise court found that the lender had a title to the rents, although the lender had taken no steps to collect the rents following default. The economic reality underlying the assignment in Ventura-Louise, no less than in the instant case, was the mortgagee's desire to assure payment of the debt. Just as in the instant case, the lender clearly relinquished any right to rents prior to default, and rents collected in excess of any deficiency belonged to the borrower. In fact, the language of the assignment in Ventura-Louise was far less absolute and unequivocal than the language in the clause at issue in the instant case. Id. The Ventura-Louise court relied on Kinnison v. Guaranty Liquidating Corp., 18 Cal.2d 256, 115 P.2d 450, 453 (Cal.1941), also cited by the Taylor court. In Kinnison, the court recognized that the mortgagee's claims to rents had priority under an assignment of rents clause. Kinnison, 115 P.2d at 454. In Kinnison, however, the mortgagee collected the rents immediately after executing the assignment and prior to default. Id. The Kinnison court characterized the mortgagee's interest under the assignment as a "present assignment," and stated that the controlling test is whether the parties contemplated an assignment of rents merely as a pledge of rents for security purposes, or as a "present assignment" contingent on default that does not constitute a "pledge ... for security purposes." Id. at 453
 
 
 [4]
 The Taylor court did not state whether we must determine if the parties intended to assure payment of the debt, in which case the mortgagee will always lose, or if we must determine whether the parties intended to transfer the right to rents immediately upon default, in which case the mortgagee can win if the evidence of intent is sufficiently clear. If the critical question is whether the parties intended to secure the debt, the mortgagee loses because the mortgagee's motive for requiring such an assignment will always be to assure payment of the debt and to have an additional remedy upon default. Because the Taylor court must have meant for at least some absolute assignments of rents in connection with a mortgage to be valid, we conclude that the critical question must be "whether the assignment of rentals operated as an absolute assignment ... so as to transfer rents automatically upon default...." Taylor, at 594
 
 
 [5]
 The Taylor court stated that the assignment of rents clause at issue in that case must be construed together with the deed of trust executed contemporaneously with it in order to determine the intent of the parties. FWG goes further, however, and argues that the parties cannot create an absolute assignment of rents unless the assignment of rents is entirely unrelated to the security documents. If this were a proper statement of the law, an absolute assignment could never be created when enjoyment of the rents is contingent on a default under the security agreements. The Taylor court clearly contemplated the possibility of such assignments, however, when it stated that "an absolute assignment of rentals operates to transfer the right to rentals automatically upon the happening of a specified condition, such as default." Taylor, 621 S.W.2d at 594. Furthermore, in both of the cases cited by the Taylor court, apparently as examples of absolute assignments, the assignment is related closely to the security agreements. See In re Ventura-Louise Properties, 490 F.2d 1141 (9th Cir.1974); Kinnison v. Guaranty Liquidating Corp., 18 Cal.2d 256, 115 P.2d 450 (Cal.1941)
 
 
 [6]
 The assignment of rents clause states, however, that subparagraphs (a) and (b), which allow the lessees to pay the mortgagor until notice of default, "are intended solely for the benefit of each Lessee and shall never inure to the benefit of Grantor or any person claiming through or under Grantor...." This language indicates that the parties did not intend for these provisions to prevent an absolute assignment
 
 
 [7]
 We do not intimate how we might resolve a similar dispute involving the rights of third parties, or a dispute in which the rents at issue had been commingled with other funds. Because the instant case involves the rights only of the parties to the assignment, and because their intent to transfer the right to rents immediately upon default is clear, we find no reason not to give effect to their agreement